# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**Case No.: _____**

OPTUMRX PBM OF ILLINOIS, INC.
and OPTUMRX, INC.

     Petitioners,

v.

UNITED NETWORKS OF AMERICA, INC.,

     Respondent.

_____

## PETITION TO PARTIALLY VACATE ARBITRATION AWARD

Petitioners OptumRx PBM of Illinois, Inc. and OptumRx, Inc. ("Petitioners"),
pursuant to 28 U.S.C. § 1332 and 9 U.S.C. § 10, file this Petition to Partially Vacate
Arbitration Award and Incorporated Memorandum of Law ("Petition").

## PRELIMINARY STATEMENT

1.    This Petition seeks to partially vacate an improper final arbitration
award issued on October 5, 2023 (the "Award") that purports to require Petitioners
to pay over ▮▮▮▮▮▮▮ in damages for breach of a contract that was not put before
the arbitrator as a potential ground for liability.  That contract does not include an
arbitration clause and, to the contrary, requires litigation of any disputes in a

Colorado court.  Further, the parties were never afforded an opportunity to brief the validity of that contract, let alone whether Petitioners breached the contract or were liable for damages for any purported breach.  The arbitrator therefore exceeded the scope of his contractual authority and also denied the parties a fair opportunity to present their case.  Accordingly, the section of the Award ordering Petitioners to pay damages for breach of that contract must be vacated.[1]

## PARTIES

2.      Petitioner OptumRx PBM of Illinois, Inc. ("Optum PBM") is a Delaware corporation with its principal place of business in Minnesota.  Optum PBM is the successor in interest to Catamaran PBM of Colorado, LLC, a respondent in the arbitration, which was a Delaware corporation with its principal place of business in Illinois.

3.      Petitioner OptumRx, Inc., is a California corporation with its principal place of business in Irvine, California.

4.      Respondent United Networks of America, Inc. ("UNA"), is a Louisiana corporation registered to do business in Louisiana with its principal place of business in Baton Rouge, Louisiana.

---

[1] A copy of the award dated October 5, 2023 is attached as Exhibit 1 to the Declaration of Michael Holecek submitted in connection with this Petition.  Subsequent references to Exhibits or "Ex." are to the exhibits attached to the November 3, 2023 Declaration of Michael Holecek.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this Petition under 28 U.S.C. § 1332, as there is diversity of citizenship between Petitioners and Respondent, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Petitioners have timely filed and will serve this Petition on Respondent within three months of October 5, 2023, the date the Award was issued and delivered to the parties.  9 U.S.C. § 12.

6.     Venue is proper in this District under 9 U.S.C. § 10 as the underlying arbitral Award was made in Amelia Island, Nassau County, Florida.

## FACTS

### A.     Overview of the Parties' Businesses

7.     Catamaran provides pharmacy benefit management and medical recordkeeping services to third party payors and health plan sponsors.[2]  Catamaran maintains a network of pharmacies that have agreed to provide discounts on prescription drugs for Catamaran's clients.

8.     Catamaran generally does not engage directly with the consumers who ultimately take advantage of these discounted drug prices.  Instead, Catamaran works with third parties that engage with consumers and encourage those consumers

---

[2] At all times relevant to this Petition, Catamaran PBM of Colorado, LLC was the primary entity responsible for transacting with UNA.  Accordingly, this Petition refers to Petitioners collectively as "Catamaran."

to save money on prescription drugs by presenting discount cards when purchasing medications at retail pharmacies.

9.    UNA is one such third party that administers a discount card program. UNA provides discount cards to consumers who can then take advantage of reduced drug prices negotiated by Catamaran.  Generally speaking, when UNA's customers obtain discounted drugs from a participating pharmacy due to the use of a UNA discount card, UNA earns a commission on those purchases.

10.    National Benefits Builder, Inc. ("NBBI") also administers a discount card program.  Even though NBBI has held itself as a competitor of UNA in the discount card industry, the two companies maintain a friendly relationship and collaborate in business dealings with one another from time to time.

**B.    The 2013 Catamaran-UNA Agreement**

11.    In late 2013, Catamaran and UNA negotiated an agreement (the "2013 Agreement"), under which Catamaran agreed to pay UNA a ███████ commission for qualifying claims submitted by UNA.  *See* Ex. 2 at 1, 23.  The ██████ commission in the 2013 Agreement was an extremely favorable rate for UNA, and represented an increase of between ████████████ over rates contained in earlier agreements between the parties.

12.    ██████████████████████████████████████████
████████████████████████████████████████████████

4

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

13.   ███████████████████████████████████████████████

██████████████████████████████████████████████████████

███████

14.   ███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

**C.    UNA Announces a Discount Card "Acquisition" Immediately After Signing the 2013 Agreement, and Catamaran Suspects Fraud**

15.    The 2013 Agreement was executed on December 10, 2013.  Just eight days later, on December 18, 2013, UNA notified Catamaran with a two-sentence email that it had purportedly acquired the discount card program operated by NBBI,

who had an already-existing, separate and exclusive contract with Catamaran under which Catamaran was obligated to pay ███████ per commissionable claim to NBBI.  *See* Ex. 1 at 26.  This December 18 email was the first time that UNA had even mentioned to Catamaran that it was purportedly negotiating to acquire NBBI's discount card program.

16.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

17.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

18.     Thus, before recognizing NBBI's discount card business under the 2013 Agreement, Catamaran immediately asked for independent proof to validate the alleged acquisition between UNA and NBBI. ████████████████████████

████████████████████████████████████████████

19. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

**D.**  **Determined to Bring the NBBI Claims Under the 2013 Agreement, UNA Initiates Arbitration Against Catamaran**

20.    On May 25, 2016, UNA commenced arbitration with the American

Health Lawyers Association ("AHLA"), ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██ ████████ ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

21. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

██

**E.      The Award**

22.     The arbitrator issued the Award on October 5, 2023, over seven years

after the arbitration began.

23.     As relevant here, the arbitrator found ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

24.     On the other hand, the arbitrator found that ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Specifically, the arbitrator found that █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████

25.    In other words, the arbitrator found that ████████████████████

████████████████████████████████████████████ ██ █████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████ That should

have been the end of the matter with respect to UNA's demand for contract damages

███████████████████████████████

26.    But, inexplicably, the arbitrator nevertheless went on to award damages

based on a *different* contract that was **<u>not</u>** before the arbitrator and **<u>did not</u>** include

an arbitration clause.  The arbitrator started down that road by suggesting that ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Ex. 1 at 26.  The arbitrator then went in search of a contract upon which to award

money to UNA ██████████████████████████

27.    ██████████████████████████████████████████

███████████████████████████████████████████████████████

9

██████████████████████   The 2005 Health Trans Contract had previously governed the relationship between UNA and Catamaran, which was formerly known as Health Tran, LLC.  *See* Ex. 4.  As relevant here, the 2005 Health Trans Contract required Catamaran to pay a ██████ commission to UNA for each qualifying UNA commissionable claim under that agreement.  *See* Ex. 1 at 26.

28.    Although the arbitrator recognized that ████████████████████████ ██████████████████████████████████████████████████, the arbitrator found that ████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ *Id.* at 27.  The arbitrator concluded that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ *Id.* at 26–27.  The arbitrator awarded UNA ██████████ ███████████████████████ under the 2005 Health Trans Contract.

29.    The arbitrator's damages award under the 2005 Health Trans Contract relied on a theory of liability that the parties had not previously briefed and on an agreement that was not before the arbitrator as a ground for liability.  Specifically, the arbitrator's damages were premised on the (incorrect) finding that Catamaran was liable to UNA under the 2005 Health Trans Contract.

30.     But disputes under the 2005 Health Trans Contract are not arbitrable. On the contrary, Section XV(I) of the contract states that the parties thereto "consent and submit to the exclusive jurisdiction of the courts within the State of Colorado in any action instituted under this Agreement."  Ex. 4 at § XV(I).  Accordingly, the arbitrator, whose authority derived exclusively from the parties' consent to arbitration in the 2013 Agreement, had no authority to award damages in connection with UNA's alleged ████████████ under the 2005 Health Trans Contract.  Those claims properly belong in a court located in Colorado.

31.     Additionally,   neither   party   briefed   nor   otherwise   addressed Catamaran's alleged liability to UNA under the 2005 Health Trans Contract. Contrary to the arbitrator's statement in the Award, Ex. 1 at 26, ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████

32.     To the contrary, as an alternative to its claim for contract damages under the 2013 Agreement, UNA asserted claims for ██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████ Ex. 5 at ¶ 115.  *See also* Ex. 6 at ¶¶ 354–64.  Accordingly,

the parties did not address the question of whether the 2005 Health Trans Contract sprang back to life following termination of the 2013 Agreement, much less Catamaran's potential liability for payments under that contract, which does not contain a provision allowing UNA to be reimbursed for claims originating from newly acquired books of business, such as NBBI's.[3]

## MEMORANDUM OF LAW

**A.    Argument**

The Federal Arbitration Act ("FAA") provides that a "United States court . . . may make an order vacating the award" in the following instances:

(a)    "where the award was produced by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1);

(b)    "where there was evident partiality or corruption in the arbitrators, or either of them," 9 U.S.C. § 10(a)(2);

(c)    "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," 9 U.S.C. § 10(a)(3);

(d)    "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[3] Catamaran did raise the 2005 Health Trans Contract in the arbitration to demonstrate that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But at no time did Catamaran (or UNA) argue that the 2005 Health Trans Contract provided a basis for awarding contract damages on the NBBI claims.

definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

This Court should partially vacate the Award for two independent reasons: (1) the arbitrator exceeded the scope of his powers by relying on the 2005 Health Trans Contract to award damages to UNA; and (2) the arbitrator committed misconduct by introducing and relying on the 2005 Health Trans Contract as a basis for liability and damages for the first time in the Award, thus depriving the parties of the opportunity to present their case on the issue.

1.   **The Arbitrator Exceeded the Scope of His Powers by Resolving UNA's Damages Based on a Contract Outside the Scope of the 2013 Agreement and Not Subject to Arbitration.**

Arbitration is a creature of contract and "arbitrators derive their authority from the scope of the contractual agreement." *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979). Courts should vacate an arbitration award that "strays from interpretation and application of the agreement and effectively dispenses [the arbitrator's] own brand of industrial justice." *Battles v. Am. Van Lines, Inc.*, 2016 WL 1258597, at *7 (S.D. Fla. Mar. 31, 2016). When an award "does not draw its essence from the contract" that provided for arbitration, "the reviewing court need not defer to the arbitrator's conclusions." *Interstate Brands Corp. v. Local 441 Retail, Wholesale & Dep't Store Union, AFL-CIO*, 39 F.3d 1159, 1162 (11th Cir. 1994) (internal quotations omitted). "[A]n arbitrator cannot shield himself from judicial correction by merely *making noises of contract*

*interpretation*" or by "dress[ing] his policy desires up in contract interpretation clothing." *Anheuser-Busch, Inc. v. Illinois, Local Union No. 744*, 280 F.3d 1133, 1138 (7th Cir. 2002) (emphasis in original; internal citations and quotations omitted).

When an arbitrator resolves issues that the parties' contract did not authorize him to decide, the award must be vacated. For example, in *Totem*, the Fifth Circuit Court of Appeals (which at that time comprised what is currently the Eleventh Circuit) vacated an arbitration panel's award of damages as exceeding the panel's authority. 607 F.2d at 650. The panel was appointed to resolve disputes regarding amounts owed under a charter party agreement that was terminated due to excessive repairs and delays. *Id*. The vessel owner did not request damages for "charter hire," the amount the charterer agreed to pay to use the vessel. *Id.* Nevertheless, the arbitration panel awarded charter hire damages. In so doing, the "arbitration panel exceeded its powers by awarding damages for charter hire" fees that were not at issue in the arbitration. *Id.* at 651 (reversing district court and vacating award).

Similarly, in *Bruno's, Inc. v. United Food & Commercial Workers International Union, Local 1657*, 858 F.2d 1529, 1532–33 (11th Cir. 1988), the Eleventh Circuit affirmed vacatur of an arbitration award that crafted a new employee-discipline policy. The parties' collective bargaining agreement authorized the arbitrator to determine the validity of employment policies. *Id.* at 1532. But instead of simply declaring the employers' policy invalid, the arbitrator

went further and outlined a new policy the parties should follow.  *Id*. at 1531–32. The Eleventh Circuit explained that, although arbitrators have broad powers to shape remedies, that power is not "unfettered" and an arbitrator exceeds his authority when he awards a remedy that is outside the scope of the parties' agreement.  *Id*. at 1531.

Likewise, in *187 Concourse Associates v. Fishman*, the Second Circuit affirmed vacatur of an arbitration award where, after finding that an employer had just cause to terminate an employee, the arbitrator fashioned his own remedy to reinstate the employee.  399 F.3d 524, 527 (2d Cir. 2005).  The court explained that the arbitrator's powers were limited to the questions presented for arbitration, which only permitted the arbitrator to fashion appropriate relief if the employee was not terminated for just cause.  *Id*.  Thus, "[u]pon a finding of just cause, there was nothing further to be done."  *Id*.

Here, the arbitrator exceeded his powers under the 2013 Agreement when he found Catamaran liable for an alleged breach of the entirely separate 2005 Health Trans Contract.  The arbitrator's authority under the 2013 Agreement extended only to disputes "arising out of or in connection with this [2013] Agreement," and explicitly cautioned that "[t]he arbitrator shall have no right to . . . vary or ignore the terms of this Agreement."  Ex. 2 at § 10.6.3.

Having found that ████████████████████████████████████, "there was nothing further to be done."  *See 187 Concourse*, 399 F.3d at 527.

Nevertheless, the arbitrator found that an entirely separate agreement—the 2005 Health Trans Contract—sprang back to life once the 2013 Agreement was terminated and somehow became an enforceable contract again. *See* Ex. 1 at 27. He then granted himself authority to make an award of damages pursuant to the 2005 Health Trans Contract and found that ████████████████████████████ ████████████████████████████████████████ *Id*. This Award has no basis in the 2013 Agreement.  Moreover, the 2005 Health Trans Contract governed claims submitted to Catamaran from UNA, not from NBBI, further demonstrating the impropriety of the arbitrator's Award.

Indeed, the Award makes clear that the arbitrator's goal was driven by some form of rough justice.  He observed that ████████████████████████ ████████████████████████████████████████ ████████████████████[4] *Id*. at 26.  That is exactly the type of "industrial justice" award, unmoored from the contract at issue in the arbitration from which the arbitrator derived his authority, that must be vacated. *Bruno's, Inc.*, 858 F.2d at 1531.

The award of almost ████████ under the 2005 Health Trans Contract was particularly inappropriate because that contract does not contain an arbitration

---

[4] ████████████████████████████████████████████ ████████████████████████████████████████████

provision at all, and instead expressly designates the courts in Colorado as the exclusive forum to resolve disputes under that agreement.  *See* Ex. 4 at § XV(I).  Thus, the arbitrator not only ignored the limitations of his powers under the 2013 Agreement, but violated the 2005 Health Trans Contract's requirement that all disputes under that contract be resolved in Colorado courts, not in arbitration elsewhere.

In short, the arbitrator was free to find that the NBBI claims did not fall under the 2013 Agreement, but he was not at liberty to go outside of the 2013 Agreement to find a breach of and award damages under a completely separate agreement not before him for that purpose.  That is a paradigmatic example of an arbitrator dispensing his own brand of justice, and the portion of the Award granting relief in connection with the NBBI claims must be vacated as a result.  *See Anheuser-Busch*, 280 F.3d at 1143 ("[C]ourts have no choice but to refuse enforcement of the award when the award fails to draw its essence from the . . . agreement.") (internal quotations omitted).

### 2.    The Arbitrator Failed to Provide the Parties an Opportunity to Be Heard on This Novel Theory of Contract Damages.

Section 10(a)(3) of the FAA also empowers this Court to vacate an award where the arbitrator's misconduct prejudices the rights of a party.  Although arbitrators "enjoy wide latitude in conducting an arbitration hearing," "any efficiency in the arbitral process is constrained by the arbitrators' obligation to

provide each party a fundamentally fair hearing." *Battles*, 2016 WL 1258597 at *4–5. A "fundamentally fair hearing" requires, for example, adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. *Id.* at *5. It also requires that an arbitrator "'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chanda*, 2008 WL 11406040, at *2 (S.D. Fla. Feb. 11, 2008) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). That includes affording the parties an opportunity to address any new theories of liability or damages not previously addressed in the pleadings. *See, e.g.*, *Selective Ins. Co. of Se. v. William P. White Racing Stables, Inc.*, 718 Fed. Appx. 864, 869 n.3 (11th Cir. 2017); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1128 (Fla. 1985). *Accord Cofinco, Inc. v. Bakrie & Bros., N. V.*, 395 F. Supp. 613, 615–16 (S.D.N.Y. 1975) (vacating arbitration award and holding that when arbitrators decide matters outside their scope, they exceed their authority and also deprive the parties of their right to a fair hearing).

For example, in *Talel Corp. v. Shimonovitch*, the Florida District Court of Appeals, applying the Florida Arbitration Code's analog to Section 10 of the FAA, ordered the trial court to vacate an award because the arbitrator deprived the defendants of an opportunity to respond to plaintiffs' claims for unliquidated damages either orally or in writing. 84 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2012).

As stated by that court, "the arbitrator failed to provide the defaulted defendants with *any* hearing on unliquidated damages, much less a 'fundamentally fair' hearing"— that decision violated the "defaulting party['s] . . . due process entitlement to notice and an opportunity to be heard as to the amount of unliquidated damages" and required vacatur of the award. *Id.* It was irrelevant that this occurred in the context of an arbitration rather than a civil lawsuit. An agreement to arbitrate disputes does "not obviate the need for a hearing" on a novel theory of damages. *Id.*

Here, the arbitrator similarly failed to provide Catamaran the opportunity to address his theory that ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ Ex. 1 at 27. The Award was the first time that the arbitrator made any mention of this theory. He never invited the parties to brief the issue, nor did he ever hold a hearing. This failure to afford the parties an opportunity to respond to a possible award of contract damages under the 2005 Health Trans Contract deprived Catamaran of the opportunity to present its case and a fundamentally fair hearing.

UNA never raised this theory of liability or damages in its submissions at any point in the arbitration. That is not to say UNA did not have the opportunity, however. The arbitration proceedings lasted seven years, and the case was set for a final hearing at least twice. Ex. 1 at 2. UNA submitted multiple articulations of its claims, including in a May 2016 Arbitration Statement and an April 2021

Supplemental Arbitration Statement—neither one raised the 2005 Health Trans Contract as a basis for liability. *See generally* Exs. 3, 5.  Indeed, UNA filed a Motion for Interim Relief in July 2017 in which it argued that, ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████  Ex. 8 at 2.  UNA did not reference the 2005 Health Trans Contract as an alternative basis for liability in its Motion for Interim Relief.  *Id.*  The same is true of UNA's pre-hearing brief and its over 160-page post-hearing brief.  *See generally* Exs. 6, 9.  Indeed, UNA never once argued that if Catamaran refused to recognize and pay NBBI's discount card claims under the 2013 Agreement, that the 2005 Health Trans Agreement would somehow spring back to life and govern NBBI's discount card claims such that Catamaran would owe UNA ███████ per commissionable claim for NBBI's claims.  *See generally* Exs. 3, 5–9, 11.

Because neither the parties nor the arbitrator raised or even mentioned this theory before the arbitrator authored his Award, Catamaran accordingly never had a chance to assert defenses based on the 2005 Health Trans Contract, nor to challenge its validity as applied to the NBBI claims.  The arbitrator's decision to adopt this new theory without input from the parties and contrary to the parties' express

positions in the case deprived the parties of a fundamentally fair hearing and therefore amounted to misconduct under the FAA. Accordingly, the Award should be vacated.

## **RELIEF REQUESTED**

Petitioners respectfully request that this Court grant this Petition to Partially Vacate the arbitration Award to the extent it awards UNA damages ████████████ ████████████████████████████████████████████████, and grant Petitioners such other and further relief as the Court deems just and proper.

Dated: November 3, 2023

/s/ Erica Conklin Baines
Erica Conklin Baines
Florida Bar No. 58121
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Tel:   (312) 526-1551
Erica.Baines@huschblackwell.com
**Lead Counsel**

Michael Holecek
Florida Bar No. 1035950
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel:   (213) 229-7018
MHolecek@gibsondunn.com

*Counsel for Petitioners OptumRx PBM of Illinois, Inc. and OptumRx, Inc.*